First case for argument, Grenadyor v. Ukrainian Village Pharmacy. Mr. Cornell. Thank you, Your Honor. May it please the Court. My name is Tim Cornell and I represent the appellant here, Yuri Grenadyor. This is a case about the, that represents the convergence between the False Claims Act and the Anti-Kickback Statute. We took this case because it's fairly clear that the courts in this district are getting further and further afield with how they apply certification in this court, in the circuit, and we thought that this was a good opportunity for the circuit to bring home the reasoning that in Maine on how to analyze situations such as this, or in the alternative, adopt the reasoning that's becoming more and more pervasive in other circuits adopting implied certification. Is this case settled or not? This case is not by any means settled, as the defendant, who filed his late brief yesterday, is well aware. In order for us to have any kind of settlement, first of all, we need to have all of the terms nailed down, and secondly, we need to, it's the consent of the government. The government hasn't even been informed of any plausible settlement. Thank you. Yes, thank you. So, as you can see in the in the district courts opinion, it based its dismissal on the fact that it found that the 855B certification, which the pharmacies needed to sign in order to be enrolled in the Medicare program, it found that this document was forward looking, and on that basis, was not an appropriate certification. Well, what factual basis did you provide for the claim that at the time they signed the pharmacies that were controlled by the BOGA checks waived copayments and provided those inducements? So, that alone serves as the definition of kickbacks under the anti-kickback statute. But what factual basis did you provide? What factual basis? Well, we have eyewitness proof in the form of my own client, as well as other employees at various pharmacies. We have photographs of the gifts that were presented. We have testimony, well, we have the admissions of the various pharmacies themselves that they do this as a matter of policy. But weren't the enrollment applications signed years before the incidents that were described here? They were signed years before, and the allegation is that these kickbacks were going on, you know, from the time that they were signed, from the time they were admitted and until the The District Court's central question was, was the 855B document forward-looking? And it found that if it was forward-looking, it therefore did not constitute a certification. It certainly was not an express certification, and the Seventh Circuit does not recognize implied certification, and therefore it could not give rise to a false claim. We strongly believe that that's completely out of kilter with your own reasoning in Maine and its progeny that have spread throughout the country. If you don't think that that is enough, we strongly believe that the court should adopt implied certification as the District Court seemingly urged in order to capture this type of behavior. Without it, the Circuit is going to allow... Well, what's the difference between the implied certification argument in your previous argument? In the previous argument? You said you had two grounds? Well, two grounds. So, I mean, I think that this Court's reasoning in Maine is not implied certification. I think it's much more intellectually rigorous than implied certification. The question of what is a defendant doing when it's signing up to the government, is it lying in order to get the government payment? How is that different from implied certification? Implied what was implied? What was the text of the certification that was made? In your opening brief, you mentioned the 2010 amendment to the AKS, but you state that the conduct alleged here predates that amendment. But in the reply brief, you stated that the 2010 amendments is a basis for liability because the Third Amendment complaint alleged an ongoing scheme. Why shouldn't we consider that argument that was based on the 2010 amendment waived for failure to raise it in the opening brief? It is stated in our Third Amendment complaint that the actions took place forward of 2010. It was not the question that we brought on this appeal. We didn't bring this appeal for you to find that actions under the PPACA were triggered liability because that seemed to us an obvious question. We were more interested in the question. So the defendants signed the certification statement. Is this the one that says I agreed to abide by the Medicare laws, etc.? Yes. Now is it your idea that because they said this and were lying, that all the claims made for specific reimbursement or whatever they do were false? Is that your theory? That's the theory. I wouldn't say all claims because certainly they didn't give kickbacks. No, but I mean a claim in which they were asking for something contrary to the law. Right. The government contracts with the pharmacies. The pharmacies sign a contract. The government then should get the benefit of its bargain. What it bargains for is purchases that are made free and untainted of kickbacks. But what you consider their false claims, were they asking for money or was this just their dealings, you know, kickbacks to customers to try to get them away from other pharmacies? Right. It was kickbacks to other customers. So they're actually taking money from the government. Well, they are taking money in the form of getting reimbursed through Medicaid for the prescription purchases. So a customer comes in, she gets a prescription for arthritis, she walks out with a, you know, either a waived copay or a cash gift card or some other sort of gift. That is by definition a kickback. The pharmacy then asks the government for reimbursement for that purchase. Well, but is the reimbursement improper? The kickback seems to be not, I don't know if understands, but is the kickback something that harms the government or is it just part of a competitive struggle with other pharmacies? I think that's actually the central question in this case. I think that's that really cuts to the nub of the whole thing. And what the government is trying, the reason why the government wants to have a kickback-free environment is it wants to have a playing field in which all the different competitors are competing against each other, but under the terms that the government wants. It doesn't want a compete on other things, you know, paint your store red or, you know, other things. It certainly does not want kickbacks. So, for instance, when there was caviar or Sprats, which are dear to my Latvian heart, was the cost of that added to the cost of the prescription? No, it was not added. The real question is what is it doing to the overall market? You know, if we're to allow kickbacks, if we're going to say to the pharmacies, go ahead and go ahead and do this, then every pharmacy is going to have to do this in order to compete. That's automatically going to change the way the entrance fee to the playing field. The copay can be waived, though. It can be waived, but not as a policy, not as a regular thing. You have to look at why. So what's the dividing line between the occasional waiver and doing it as a policy? Well, we don't even have to consider the dividing line because they were doing it as a policy. There must be a dividing line somewhere. I would think that the dividing line would be consideration of who the customer is, whether they can afford the copay. Here, they did it, you know, as a matter of course, so it's clearly way over on the other side. Was it advertised that they would waive the copay? It was advertised that they would waive the copay. I want to ask you about your retaliation claim. Yes. It's not included in the Third Amendment complaint, but you argue it on appeal. Yes. We believe that the court's original reasoning in dismissing it in the Second Amendment complaint was improper, and so we're going to directly appeal its reasoning there. And Mr. Grenador made no governmental complaint or complaint outside of the Ukrainian village pharmacy, did he? Oh, well, he filed a false claims complaint under seal. Right, right, right, but prior to that, prior to his termination or the cutting of his hours and so forth, everything he had complained about had been within the Ukrainian village pharmacy. Exactly, yes, yes. So could that be the basis of a retaliation claim? Retaliation claim against Ukrainian village and the Bogachevs, who were, you know, his supervisor. Retaliation by them. Retaliation by them, yes, because they were responsible for his dismissal. Have any of the pharmacies sued or complained? Sued or complained about these kickbacks? Have any of the pharmacies sued or complained about the kickbacks? I'm sorry. Have any pharmacies? Have any pharmacies? Well, there's the Yarberry. There must be I see what you're saying. Interesting question. Not that I'm not that I'm aware of. There's a similar case, Yarberry versus Kmart in the Southern District of Illinois, where another employee brought a similar claim and it was held up, but I'm not aware of another pharmacy. Interesting question. Is this some, is this these Ukrainian-Russian pharmacies, is this some little world of their own? Apparently, yes, yes, yes. So they're not competing for the ordinary people, are they? Oh, for the bigger picture? Yeah, Walgreens and so on? I can't imagine that they wouldn't be. Walgreens is everywhere. I mean, so, you know, of course someone always has the opportunity to go to a Walgreens. My time is up. So they must, you know, almost, you know, by definition be competing with them. Is it they're too You mean, why doesn't Walgreens? Walgreens doesn't give these kickbacks. No, but clearly Kmart does, right? Because, you know, that was the Yarberry versus Kmart case. Walgreens doesn't do it, I assume, because they follow the law. Thank you, Your Honors. I reserve the rest of my time. Mr. Floyd. Thank you, Your Honor. May it please the Court. My name is Mason Floyd and I represent Appellee's Michael Bogachek, Edward Bogachek, MEI Services, Inc., Buckhead Pharmaceutical Association, Inc., Buckhead Pharmacy, Inc., and PharmaLife Massachusetts, Inc. And you contend the case is settled? I do. The purpose of my That is my position, Your Honor. This appeal is really about one issue, whether the relator has sufficiently alleged fraud. And Rule 9b requires particularity when pleading fraud. Particularity is more than just general accusations of wrongdoing. Here the relator must provide specific examples of wrongdoing that satisfy the who, what, when, where, and how requirements of Rule 9b. Well, should we consider the 2010 amendment to the AKS to be a clarification that claims violating the AKS are always fraudulent for purposes of the False Claim Act, or is it an extension that adds liability where none previously existed? I don't believe the 2010 Affordable Care Act is applicable. First off, the relator does not cite any provision that is retroactive in any way. Second, his employment with Ukrainian Village Pharmacy ended in 2008, and he states no factual basis for this alleged fraud continuing past that date, other than by generally saying upon information belief it continues to this day. When you say alleged fraud, do you mean these kickbacks didn't occur, or you don't consider them fraudulent? As to my clients, he does not cite one specific example. Well, answer my question, will you please? The kickbacks, whether they occurred or not, have not been alleged with specificity. Have not been alleged to be what? With specificity. Well, that's your 9b argument. Right. This case was dismissed at the pleading stage. We never got to a matter of proof. It was whether or not the complaint, its four corners, stated enough to support these allegations. And my position is it did not, and the district court thankfully agreed. It is woefully division of specifics. Well, I don't know, the caviar, and the, well, what is missing? Excuse me, Your Honor? What is missing? Specifics, as to my client. So this case proceeded on a false certification theory, where later, in a 30-minute complaint, included these allegations in the 855B form of express false certification. He relies on Maine v. Oakland City, this court's decision. That's not responsive. If you look at the complaint, Your Honor, the relator includes the certification allegations for the first time in the 30-minute complaint, and he says that these things were signed. He can't tell you who they were signed. He says, on information and belief, it was this person of this person. He says that it was signed around this time, and then in the most conclusory manner... But you had no discovery. Precisely. And when signed, those were not signed. And presumably the pharmacy may retain a copy of them, but Mr. Grenador wouldn't. He's not the person signing them. Precisely. He doesn't articulate any factual basis with to make those allegations. As the court pointed out, his... Those are certifications that a pharmacy would have to submit in order to get reimbursed for Medicare and Medicaid prescriptions, right? Correct. So they've got to be somewhere. They may be, but the relator has no basis. He has no basis for knowing that, and you have to be specific in our Rule 90. He's got to allege who made them, this representation, when it was made, how it was made, why it was filed. How is he supposed to, if he's been fired, how is he supposed to find out that information? It's not my burden. Rule 90... No, you're not answering my questions. You're fencing with me. I asked you a question. How is he supposed to find out that information? Your Honor, I don't know, but the complaint must include the information for it to proceed forward. Well, don't our decisions in U.S. Sex, Rel, Abture, and Moments, Meadows, and Rogen, U.S. versus Rogen, at least suggest that implied certification is sufficient to establish a claim? Well, first of all, I don't think the Rogen decision... The District Court's opinion did suggest that, and I think when, on appeal, that was not the issue before the Court. It was materiality, and that case, Rogen case, dealt with an express false certification. It was not an implied certification. The same is here. I see my time's up. Okay, well, thank you, Mr. Mason. I mean, I'm sorry, Mr. Floyd. Mr. Kashuba? May I please the Court? My name is Nazar Kashuba. I represent two defendants in this matter. I represent individual Mr. Dinkavich, who worked in Ukrainian Village Pharmacy, and I also represent Global Pharma Life LLC, a Georgia company. With respect to Mr. Dinkavich, my position, Your Honor, that his participation in the alleged scheme was not alleged properly. In fact, the entire the only allegation that somehow can be... Can connect Mr. Dinkavich to the alleged fraud that he supervised day-to-day operation of the Ukrainian Village Pharmacy, and he reported to another defendant. Also, it was alleged that he purchased the gifts. Those are the only allegations against my client, and for that reason, we initially moved to dismiss the case based on the fact that the complaint was factually insufficient against him, and same arguments were raised on appeal. Also, it should be mentioned that on the trial court level, when we filed motion to dismiss on behalf of Mr. Dinkavich, his arguments were not addressed, and the court dismissed the case. The relator did not report a dismissal, and in the reply brief, once again, his name was never mentioned. So my position on the appeal, Your Honor, that all arguments... The appeal against my client and the arguments that are brought against Mr. Dinkavich on appeal should be weighed, because it was never argued on the trial court level. Your Honor, with respect to Global Pharma Life, it's a similar situation. We also alleged that no factual allegations connecting my client to the alleged fraud were applied with sufficient degree of specificity. First of all, it's only three paragraphs, I believe, in the entire complaint, and those paragraphs make very general allegations and always refer back to Ukrainian Village Pharmacy practices. There is no allegation that my client, in the case that they did, there is no allegations that my client, the Global Pharma Life, Your Honor, is... Isn't there an allegation that the BOGA checks in some way control these other pharmacies like Global Pharma Life? This is correct, Your Honor. So this is the only link of my client to the entire alleged fraudulent scheme. However, it was mentioned in my briefs in the trial court level. I do believe that waiving co-pays was not an allegation of anti-kickback statute. I'm sorry, can you say that again? That waiving of co-pays, as alleged in the relator's complaint, was not a violation of the statute. As it was mentioned here, Your Honor, pharmacists can waive co-pays, and in fact, there is a certain group of people, pharmacists are encouraged to waive co-pays. Usually those are elderly people who are eligible for Medicare and Medicaid. And in this case, Your Honor, if you look, I believe it was six or seven examples when co-pays were waived. And all of the recipients of the waived co-pays were elderly people. So the relator, never in the complaint, mentioned whether or not those customers were so-called dual eligible Medicare and Medicaid beneficiaries. All of those six or seven customers were Ukrainian Village pharmacy customers, is that right? Yes, Your Honor. None of them were the global PharmaLife customers? Yes, Your Honor, there is no allegations against PharmaLife. The only reason I am bringing up Ukrainian Village customers is because we are indirectly linked to this conduct. And through Mr. Bogachev, the relator is trying to get my client into this case, saying that same practices that were applied in Ukrainian Village pharmacy were also applied in my client's pharmacy. So this is the only reason why we were responding to the argument regarding the illegal waive of co-pay. And Your Honor, we believe that the way the Third Amendment complaint is written, all of the Ukrainian Village pharmacy customers are dual eligible beneficiaries. As a result, Ukrainian Village pharmacy would waive those... What, you just have elderly customers? It's not only the age, Your Honor. First of all, it's age. So you never collect a general policy? Not as a general policy. That, of course, increases the cost to the government, Medicare and Medicaid. Your Honor, pharmacists are encouraged to waive co-pays for dual eligible individuals. There is only one... What do you do for... Do you determine eligibility, or do you just have a general policy, if not asking for a co-pay? My understanding, Your Honor, of the statute, that it has to do with asking whether your clients simply do not collect co-pays. This event didn't happen. Or whether they, you know, determine eligibility by the person's age, or decrepitude, or what have you. A simple question. Your Honor, it is a simple question, which is very difficult to answer. No, it isn't difficult to answer. Does the... Do your clients simply not collect co-pays? In the examples provided in the complaint, yes. You're not going to answer my question, right? It's a yes or no answer. Your Honor, my clients in Atlanta, Georgia, collected co-pays, and when they did not collect co-pays, they did it on a case-by-case basis. In the Ukrainian Village Pharmacy, I don't know the answer, Your Honor, because I have to respond to it, because we are vicariously linked to this conduct. So this is the only reason why I'm hesitant to give you a direct answer, Your Honor. That's fine. My time is up. Okay, well, thank you very much. Thank you. Mr. Meltzer? Good morning, Your Honors. I please the Court. My name is Gene Meltzer, and I represent the Ukrainian Village Pharmacy and Svetlana Kurlamova in this matter. As my esteemed third amendment complaint is full of flaws. The relator failed to plead the express certification, and unless the Court requires me or will ask me to get into it, I think the argument has been well presented by the prior counsel. Well, what's your response to the argument that was made in the reply brief that the third amendment complaint alleged an ongoing scheme, and therefore, under the March 2010 amendment to the AKS, those ongoing violations would be actionable? Your Honor, I believe that the 2010 amendment to the statute is not applicable here, given the fact that the alleged conduct occurred prior to the changes in the statute. And as a matter of fact, the Supreme Court in Graham versus U.S. specifically observed that the legislation makes no mention of therefore, since the conduct predates the allegations, oh, I'm sorry, the amendment, that that amendment is not applicable here. As Mr. Koshuba pointed out, the examples provided to show the waivers of the copay fall within the specific exemption to AKS, where the pharmacies are encouraged and required to waive certain copayments. Whether or not these individuals were in fact dual eligibles is a matter of fact. We haven't gotten that far in litigation to figure that out. However, it is clear that on its face, the relator failed to meet the Rule 9b requirement. Also, in the original oral arguments by Mason Floyd, Your Honor's asked how could the argument is based. There's several ways of obtaining that form and the easiest way would probably be to file a Freedom of Information Act request and see whether or not the government would in fact honor it and provide a copy of the form for each entity involved. The relator failed to conduct any sort of pre-filing investigation and went off on a fishing expedition by adding hundreds of defendants and dropping them in bunches because he couldn't allege what he was trying to allege. He's a low-level, he was a low-level employee who was trying to collect the Quinton bounty. He was doing what? He was trying to collect the bounty. Oh, a bounty. Yeah, a bounty, I'm sorry, which is not sufficient to state the complaint. You know, desire to get something is just not enough. You do the lumping of the defendants, that is just bad practice. In Vicom versus Heartbridge, it's clearly stated that in multiple defendants' complaint, a particular allegations have to be made against each defendant in order for that Here, the relator jumps from one defendant to another, lumping them together. I see my time is up. No, you can finish. And the complaint, as it states, that the first, the original complaint, the Second Amendment complaint, and the third complaint, keep lumping and dumping. Unfortunately, that's the only term I can come up with. The defendants without pleading particularity as required by the rule. Thank you, Your Honor. Okay, thank you very much, Mr. Meltzer. So, Mr. Cornell? I don't have much to say in rebuttal, so I'll actually... What about the 9b argument? They press that very hard. Yes. You know, you're supposed to allege the fraud. Right. So, as the court has often set out, the purpose of 9b is really two important purposes. Number one is to prevent, you know, sort of extortionary, you know, money grabs, and number two is to give the defendant notice of the fraud so they can see, you know, what the allegations are. Clearly, we've got the first purpose is satisfied here, but we need to look at the second and consider, you know, whether our allegations meet that. What we have here are specific persons who are active in this, quote, program. We have, you know, that they do these actions at each store, including Global Pharma Life. We have... Oh, my time is up. I see my time is up. Go ahead. For the purposes of 9b, it should be crystal clear that the defendants can look to see whether the programs that are alleged are actually taking place, and I thank you very much to all counsel. Move on to our next case, Davis versus...